{¶ 1} Appellant Mike Ballard appeals his conviction, following a bench trial, for third-degree misdemeanor criminal mischief. Appellant contends that the verdict is against the manifest weight of the evidence. The case was tried in Belmont County Court, Western Division. The charge was based on an incident that occurred on May 15, 2005, where a car owned by Charles Jackson was damaged while it was parked at Appellant's residence. Mr. Jackson was seeing Appellant's wife, Jennifer Ballard, at the time. Ms. Ballard and Appellant were living apart at the time, although they were not legally separated. Mr. Jackson loaned his car to Ms. Ballard, and while it was in her possession, someone covered the car with dog feces and damaged the tires and the windshield. The record contains substantial evidence that Appellant was the person who damaged the car, including Appellant's own admission to the crime. Appellant, though, testified at trial that it was Ms. Ballard who damaged the car. The trial judge apparently did not believe Appellant's testimony. Appellant confirmed at trial that he confessed to a St. Clairsville police officer that he committed the crime. The evidence overwhelmingly supports the verdict, and the conviction is affirmed.
 {¶ 2} The following evidence was revealed at trial on January 3, 2006. On May 15th or 16th of 2005, Jennifer Ballard was in St. Clairsville to attend her mother's funeral. She was borrowing Charles Jackson's car at the time, a 1996 Plymouth Breeze. She and Mr. Jackson were dating each other at the time, even though she *Page 3 
was married to Appellant. After the funeral, she parked the car in Appellant's driveway at 154 Woodrow Ave. in St. Clairsville so that she could visit with her children. Appellant was present when Ms. Ballard arrived, but he left for a period of time during the evening. For one or more reasons, Ms. Ballard decided to spend the night at the house. There is some indication that Appellant was depressed or suicidal that evening, and had possibly pointed a gun to his head.
 {¶ 3} When Ms. Ballard went to use the car the next morning, she saw the damage. Dog feces was spread all over the car, both inside and out. The tires were slashed, and the windshield was broken. She called the police that morning to report the incident. She told the police that Appellant admitted damaging the car. (1/3/06 Tr., pp. 24, 25.) No objection was made at trial to Ms. Ballard's testimony.
 {¶ 4} Charles Jackson was not in Belmont County at the time of the incident, but he was later told what had happened. He eventually filed a complaint for one count of criminal mischief, R.C. § 2909.07(A)(1), a third degree misdemeanor, on October 17, 2005.
 {¶ 5} On the same day that Ms. Ballard reported the damage to the police, they received another call concerning Appellant's residence. Appellant's sister-in-law, Kim Thrash, reported that Appellant was wielding a gun in the house and was pointing it at his head. St. Clairsville police officer Jeff Henry testified that he went to Appellant's house on the evening of May 16, 2005, to investigate the gun incident, and during his investigation Appellant told the officer that he damaged Mr. Jackson's car. Appellant said, "I did it and let him come down here and do something about it." *Page 4 
(1/3/06 Tr., p. 37.) The court ruled that this statement was not made during a custodial investigation and was given voluntarily. The judge allowed the statement to be admitted into evidence.
 {¶ 6} Appellant testified at trial that he did make such a confession to Officer Jeff Henry, but that he did it to protect Jennifer Ballard. Appellant claimed it was Ms. Ballard who actually damaged the car. (1/3/06 Tr., pp. 43, 45.) He said that he watched her in the act sometime during the middle of the night. He testified that she was afraid of Charles Jackson because Mr. Jackson beat and abused her and he claimed that Ms. Ballard wanted to come back and live with him. Appellant refused to allow her to move back with him, and it was after this that Ms. Ballard supposedly walked outside and damaged the borrowed car. Appellant said he stood on the porch and watched her do it, but he did nothing to stop her.
 {¶ 7} In the trial court's judgment entry of January 4, 2006, he found Appellant guilty of the charge of criminal mischief and sentenced him to 60 days in jail, with 50 days suspended. He ordered restitution of $ 259 to Charles Jackson. He also ordered an evaluation by Community Mental Health Services. This timely appeal followed on January 24, 2006.
 ASSIGNMENT OF ERROR {¶ 8} "THE TRIAL COURT ENTERED JUDGEMENT [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE TRIAL COURT JUDGE CONVICTED THE DEFENDANT-APPELLANT OF CRIMINAL MISCHIEF PURSUANT TO O.R.C. 2909.07." *Page 5 
 {¶ 9} Appellant argues that he was the only eyewitness who truthfully testified at trial, and that his testimony was that Jennifer Ballard damaged the car and not him. This is Appellant's basis for challenging his conviction. He contends that the trial court should have believed him.
 {¶ 10} Even though a verdict may be supported by sufficient evidence, the court of appeals may find that the judgment is against the weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, citing State v. Robinson (1955), 162 Ohio St. 486, 487,124 N.E.2d 148. An appellate court should only invoke its discretionary power to reverse a conviction as against the manifest weight of the evidence in extraordinary circumstances when the evidence weighs heavily in the defendant's favor. State v. Otten (1986), 33 Ohio App.3d 339,340, 515 N.E.2d 1009.
 {¶ 11} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." Id; seealsoThompkins, supra, at 387.
 {¶ 12} R.C. § 2909.07(A)(1) states:
 {¶ 13} "(A) No person shall:
 {¶ 14} "(1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with the property of another[.]" *Page 6 
 {¶ 15} Appellant is not challenging any evidentiary ruling by the trial judge. He simply believes that his explanation for what happened was more credible than all the other evidence. It is axiomatic that the trier of fact is free to believe or disbelieve any testimony. State v.Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. Appellant's explanation for what happened, frankly, appears incredible. It seems nonsensical that Jennifer Ballard would try to ruin her boyfriend's car in response to Appellant's rejection of her. It also seems unlikely that Appellant would "volunteer" to take the blame for Ms. Ballard after he allegedly rejected her. Appellant's testimony appears to create more questions than it answers. It does not clearly, or even plausibly, explain why Mr. Jackson's car was damaged, nor explain why Appellant repeatedly confessed to committing the crime.
 {¶ 16} There was no question at trial about the damage done to the car, or that the damage happened sometime in the evening of May 15th or early morning of May 16th. There was no question that the person who damaged the car did not have permission. The only element of the crime that was really at issue during trial was the identity of the perpetrator, and even this was not particularly in dispute because Ms. Ballard, Officer Henry, and even Appellant himself agreed that he confessed to damaging the car. The evidence also showed that Appellant had motive (based on the fact that his wife was dating the man whose car was damaged) and opportunity to commit the crime (since it happened during the late night or early morning hours just outside of Appellant's home). The trier of fact did not lose its way in convicting Appellant because the evidence weighs heavily in favor of the verdict. The trial judge *Page 7 
simply did not believe Appellant's far-fetched explanation. The verdict is consistent with the manifest weight of the evidence, and the conviction and sentence is hereby affirmed.
 Donofrio, J., concurs, Vukovich, J., concurs. *Page 1